IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CALVIN L. ALLEN, :
:
        Petitioner, :
:
v. : Civ. Act. No. 11-597-LPS
:
DAVID PIERCE, Warden, and JOSEPH :
R. BIDEN, III, Attorney General :
of the State of Delaware, :
:
        Respondents. :

---

Calvin L. Allen. Pro Se Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**

August 12, 2014
Wilmington, Delaware

**Stark, U.S. District Judge:**

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Calvin L. Allen ("Petitioner"). (D.I. 1) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I.    BACKGROUND

As set forth by the Delaware Supreme Court, the facts of Petitioner's case are as follows:

> On November 20 and 28, 2007, and on February 5, 2008, John Bruzdowski, a crack cocaine addict and undercover police informant, conducted controlled cocaine buys from an individual named "Hos" at 20611 Coverdale Road in Bridgeville, Delaware. On each occasion, Detective Lance Skinner of the Delaware State Police, who also was working under cover, drove Bruzdowski to the Coverdale Road location to complete the transaction. Prior to each of the three purchases, Detective Skinner searched Bruzdowski for drugs and money and then provided him with the necessary cash for the purchase-$40, $30, and $40. After each purchase, Bruzdowski returned to Detective Skinner's vehicle and turned over the crack cocaine. Detective Skinner did not witness any of the drug transactions. Bruzdowski testified that he purchased the crack cocaine from "Hos" on all three occasions and identified "Hos" as the [Petitioner].

*Allen v. State*, 976 A.2d 170 (Table), 2009 WL 1658182, at *1 (Del. June 15, 2009).

On August 14, 2008, a Delaware Superior Court jury convicted Petitioner of three counts of delivery of cocaine. The Superior Court sentenced Petitioner as follows: (1) on the first cocaine delivery conviction, twelve years at Level V, suspended after four years for eighteen months at Level III; (2) on the second delivery conviction, ten years at Level V suspended after four years for two years at Level III; and (3) on the third delivery conviction, ten years at Level V suspended after three years for decreasing levels of work release and probation. Petitioner appealed, and the Delaware Supreme Court affirmed his convictions and sentences. *See Allen*, 2009 WL 1658182, at *3.

Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Rule 61 ("Rule 61 motion") in June 2010. (D.I. 9 at 2) The Superior Court denied the Rule 61 motion without a hearing, and the Delaware Supreme Court affirmed that decision. *See In re Allen*, 2010 WL 8286752 (Del. Super. Ct. June 24, 2010); *Allen v. State*, 23 A.3d 864 (Table), 2011 WL 2463064 (Del. June 20, 2011).

Petitioner timely filed the instant Petition. The State filed an Answer, asserting that the Petition should be denied in its entirety.

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford*, 538 U.S. at 206.

### B. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C.

2

§ 2254(d). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied;" as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011).

Finally, when reviewing a habeas claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003).

## III. DISCUSSION

The Petition asserts three grounds for relief: (1) the Delaware Superior Court erred during the Rule 61 proceeding by not requesting Petitioner's defense counsel to file an affidavit in response to Petitioner's claims of ineffective assistance of counsel; (2) defense counsel provided

3

ineffective assistance during the plea negotiations by providing Petitioner with incorrect information regarding his potential maximum sentence, which caused Petitioner to reject the State's three plea offers; and (3) defense counsel provided ineffective assistance by failing to file a motion to compel the production of the photograph used in the out-of-court identification of Petitioner and/or by failing to file motions to suppress the out-of-court identification. The State contends that the Petition should be denied because Claim One fails to assert an issue cognizable on federal habeas review, and Claims Two and Three fail to warrant relief under § 2254(d).

As an initial matter, the Court concurs with the State that Claim One does not present an issue cognizable on federal habeas review. The "federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's **collateral** proceeding does not enter into the habeas proceeding." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) (emphasis in original); *see also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) ("alleged errors in [state] collateral proceedings . . . are not a proper basis for habeas relief"). Because Claim One criticizes the Superior Court's analysis in a state collateral proceeding, the Claim merely alleges an error of state law. Therefore, the Court will deny Claim One for failing to assert a proper basis for federal habeas relief.

As for Claims Two and Three, the record reveals that Petitioner presented the arguments contained in these Claims to the Delaware Supreme Court in his post-conviction appeal, and the Delaware Supreme Court denied the arguments as meritless. Therefore, habeas relief will only be warranted if the Delaware Supreme Court's denial of these claims was either contrary to, or involved an unreasonable application of, clearly established federal law.

The clearly established federal law for ineffective assistance of counsel claims is the two-prong standard articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In this case, the Delaware Supreme Court analyzed Petitioner's two ineffective assistance of counsel claims within the *Strickland* framework. Therefore, the Delaware Supreme Court's denial of Claims Two and Three was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case.

5

When performing this inquiry, the Court must review the Delaware Supreme Court's denial of Petitioner's ineffective assistance of counsel allegations through a "doubly deferential" lens.[1] *Richter*, 131 S.Ct. at 788. Notably, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id*. Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Id*. at 786.

### A.  Claim Two: Counsel's Incorrect Sentencing Information

As summarized by the Delaware Superior Court during Petitioner's Rule 61 proceeding, the background to Claim Two is as follows:

> At the [rescheduled] first case review, [Petitioner] was provided an initial plea offer in which the State alleged [he] was a habitual offender and sought a sentence of three years pursuant to 11 Del. C. § 4214(a). In [Petitioner's] Rule 61 motion, [h]e state[d] [he] declined the first plea agreement offer "hoping for a better offer at the next review."
>
> This is one of those cases where the plea offer did not get better as the trial date approached. Following [Petitioner's] return on the capias [after not appearing at the first scheduled final case review], the plea offer was raised to a recommendation of 5 years pursuant to 11 Del. C. § 4214(a). [Petitioner] further allege[d] that plea negotiations on August 6, 2008 basically went south and the 5-year recommendation was withdrawn and increased to an 8-year recommendation. [Petitioner] also allege[d] that on August 6th, the

---

[1] As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 131 S.Ct. at 788 (internal citations omitted).

6

> State presented [his] attorney with a copy of the habitual offender motion the State would file in the event of a conviction.
>
> [Petitioner] report[ed] [he] declined the second and third plea offers because [he] w[as] concerned that, although a lesser recommendation was being made, [he] could face a maximum sentence of life imprisonment. [He] allege[d] that [his] attorney was ineffective for failing to conduct an adequate investigation to determine that [he] w[as] not actually habitual-offender qualified during the plea negotiation stage.
>
> \* \* \*
>
> Following the trial and at sentencing, the State reported that it was not seeking to have [Petitioner] sentenced as a habitual offender. The State advised that it had determined that the conviction shown in the motion provided to defense counsel, but which was not filed with the Court, showed a conviction of trafficking in cocaine, but the conviction was actually for possession of cocaine.
>
> Unfortunately, the DELJIS ("Delaware Criminal Justice Information System") record shows an arrest and conviction against [Petitioner] for trafficking in cocaine. That record is in error but the DELJIS record is reasonably relied upon by those persons who use it in the criminal justice system.

*Allen*, 2010 WL 8286752, at *1-2. "The error in [Petitioner's] DELJIS record was not discovered until after [Petitioner's] trial when the prosecutor obtained the certified records of [Petitioner's] prior sentencing orders to include with the State's habitual offender motion." *Allen* 2011 WL 2463064, at *1 n.4.

In Claim Two, Petitioner contends that counsel provided ineffective assistance during the plea negotiations by misinforming him that he was eligible for habitual offender status and that he faced a possible maximum sentence of life imprisonment "as opposed to the actual fifteen year maximum sentence for the alleged offense." (D.I. 12 at 7) Petitioner asserts that he rejected all three plea offers as a result of this misinformation, because "there was no discernible advantage to forego his trial and appellate rights by accepting a plea to a potential life sentence, considering that a potential life sentence was also what he faced at trial if convicted of all charges and sentenced as a habitual offender." (D.I. 12 at 9) Petitioner also states that the

7

"disparity between a maximum sentence of 'life' versus the actual maximum sentence [of] fifteen years is so great that [he] simply could not have made a 'reasonably informed decision whether to accept a plea offer.'" (D.I. 12 at 7-8)

The Superior Court rejected this argument after determining that Petitioner failed to satisfy either prong the *Strickland* standard. With respect to the performance prong of *Strickland*, the Superior Court concluded that "the DELJIS record system erroneously showed [Petitioner] to [be] habitual-offender-eligible," and "it is unreasonable to expect trial counsel to go beyond that which the records ostensibly show in the plea negotiations." *Allen*, 2010 WL 8286752, at *2. As for the second *Strickland* prong, the Superior Court found that Petitioner failed to demonstrate prejudice, explaining:

> As [Petitioner] noted, [he] turned down the first pleas offer, not because of the potential of the habitual offender status, but because [he] thought [he] could get 'a better offer at the next review.' Unfortunately for [Petitioner], that did not happen. Whether it was due to [Petitioner's] capias or other reasons, the State was entitled to withdraw and change plea offers. The simple fact is that although it is rare for plea offers to get worse as the case moves closer to trial, it does, in fact, happen and the State is permitted to withdraw its offers as it sees fit.

*Allen*, 2010 WL 8286752, at *2. The Delaware Supreme Court affirmed the Superior Court's decision, explicitly noting that "it was not error for defense counsel to reasonably rely upon the DELJIS computerized record, particularly when [Petitioner] gave counsel no reason to believe that the record was inaccurate." *Allen*, 2011 WL 2463064, at *1.

The Court concludes that the Delaware Supreme Court's denial of Claim Two did not involve an unreasonable application of *Strickland* and its progeny. To begin, "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Lafler v. Cooper*, 132 S.Ct. 1376, 1391 (2012). The reasonableness of counsel's conduct is judged "on the facts of the particular case, [and] viewed as of the time of counsel's conduct." *Strickland*,

8

466 U.S. at 689-90. Here, the Court concurs with the Delaware State Courts' holding that counsel reasonably relied on DELJIS. Defense counsel's erroneous maximum sentencing prediction was not due to counsel's failure to understand the applicable sentencing statutes but, rather, due to counsel's reliance on an official Delaware criminal justice record that contained an error. Although Petitioner contends that counsel should have initiated a "simple investigation" into his criminal history after Petitioner told counsel that "he did not believe that he qualified as a habitual offender" (D.I. 12 at 6), Petitioner's vague statement to counsel did not provide a objectively valid reason for counsel to question the validity of DELJIS and launch an independent investigation into Petitioner's criminal history. In sum, the fact that counsel's forecast about Petitioner's possible maximum sentence turned out to be incorrect does not demonstrate that counsel's advice was incompetent based on the facts established by the official Delaware record at the time.

Turning to *Strickland*'s prejudice inquiry, the Court notes that it has not found any Supreme Court decision holding that an attorney's good faith but inaccurate prediction of his client's possible maximum sentence during plea negotiations, on its own, satisfies the prejudice prong of *Strickland*, when the client ends up proceeding to trial. Rather, the Supreme Court recently explained that a defendant establishes "prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance" by demonstrating the following factors: (1) a reasonable probability that he "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel;" (2) a reasonable probability that the prosecution would not have withdrawn the offer in light of intervening circumstances; (3) the trial court would have accepted the plea agreement; and (4) a reasonable probability "that the end result of the criminal process would have been more favorable by

9

reason of a plea to a lesser charge or a sentence of less prison time." *Lafler*, 132 S.Ct. at 1385. For the following reasons, the Court concludes that Petitioner has failed to establish prejudice, because he has failed to demonstrate a reasonable probability that he would have accepted any of the earlier plea offers if defense counsel had provided the correct habitual offender and maximum sentencing information.

First, nothing in the record contradicts the Superior Court's explicit factual finding, and the Delaware Supreme Court's subsequent implicit acceptance of that finding, that Petitioner's reason for rejecting the first plea offer was "because [he] thought [he] could get a 'better offer at the next review,' rather than Petitioner's eligibility for habitual offender status." *Allen*, 2010 WL 8286752, at *2. In his Opening Brief on post-conviction appeal, Petitioner conceded that his Rule 61 motion explicitly asserted that he rejected the first plea offer because he was "hoping for a better offer at the next review." (D.I 11, App. Op. Br. in *Allen v. State*, No.441,2010, at 8)

Second, after Petitioner was informed during the sentencing hearing that the maximum sentence he faced on each conviction was fifteen years (or forty-five years total) because he was not eligible for habitual offender status, Petitioner told the sentencing judge that he "**may not** have gone to trial on these charges. [Instead, he] **may have accepted** one of the plea offers." (D.I. 11, Appellant's Op. Br. in *Allen v. State*, No.441,2010, Exh. D at 4) (emphasis added) Petitioner did not definitively assert that he would have accepted one of the plea offers had he known he was not eligible for habitual offender status, only that he may have accepted one of the offers if he had known this information.[2]

---

[2]Petitioner's statement that "he did not plead because his trial counsel misinformed him of the maximum sentence he faced" (D.I. 12 at 4) does not constitute an explicit assertion that he would have accepted the plea if he knew he faced a total maximum sentence of forty-five years. Additionally, the Court notes that Petitioner's Reply to the State's Answer incorrectly asserts that his correct maximum sentence totaled fifteen years. The maximum sentence for **each** of the

10

Finally, unlike *Lafler*, Petitioner does not contend, and the record does not indicate, that counsel advised him to reject any of the three plea offers. Rather, Petitioner contends that he rejected the plea offers because counsel erroneously informed him that he faced the same potential life sentence if he was convicted at trial or if pled guilty and, therefore, Petitioner saw no advantage to pleading guilty. This argument is not persuasive. Petitioner was initially presented with the prospect of serving a total of three years if he pled guilty, or life imprisonment if convicted at trial. The two subsequent plea offers offered him the prospect of serving five years or eight years if he pled guilty, or life imprisonment if convicted at trial. After trial, it was determined that Petitioner was not eligible for habitual offender status and that Petitioner faced a total actual maximum sentence of forty-five years (fifteen years for each of the three charges). (D.I. 11, State's Ans. Br. in *Allen v. State*, No.441,2010, at 12 n. 29) Petitioner was thirty-six years old when he was presented with the three plea offers in 2008, meaning that he would have been eighty-one years old upon his release if he had been sentenced to the total actual maximum sentence of forty-five years.[3] Given the disparity between the three, five, and eight year sentences offered in the plea agreements, on the one hand, and the forty-five years or life imprisonment terms he faced if convicted at trial, on the other hand, Petitioner cannot demonstrate a reasonable probability that he would have accepted the earlier plea offers but for counsel's misinformation. Stated another way, Petitioner would have derived a substantial benefit by pleading guilty to any of the plea offers and serving three, five, or eight years regardless of whether the actual total maximum sentence he faced totaled forty-five years or life imprisonment.

---

three charges was fifteen years, meaning that he faced a total maximum sentence of forty-five years.

[3]Petitioner's date of birth is September 1, 1971. (D.I. 11, State's Ans. Br. in *Allen v. State*, No.41,2010, at Exh. A)

Accordingly, after viewing the Delaware Supreme Court's denial of Claim Two through the doubly deferential lens applicable on § 2254(d) review, the Court concludes that Claim Two does not warrant federal habeas relief.

## B. Claim Three: Counsel's Actions Regarding Single Photograph Out-of-Court Identification

In his final claim, Petitioner contends that counsel rendered ineffective assistance by failing to file a motion for pre-trial discovery to review the photograph used during the confidential informant's out-of-court identification and/or by failing to file a motion to suppress the photograph or the confidential informant's identification. Petitioner appears to assert that the identification evidence and/or testimony should not have been admitted because it was unreliable. The Delaware Supreme Court denied this argument as meritless for the following reason:

> As the Superior Court noted in this case, [Petitioner] challenged the single photo identification process on appeal, and this Court found no plain error with respect to the Superior Court's admission of the photograph at trial. A plain error analysis on direct appeal requires a determination about whether the alleged error affected a defendant's substantial rights and the trial's outcome. Thus, in rejecting [Petitioner's] claim on appeal, this Court implicitly held that, even assuming admission of the photograph was error, it had no effect on the outcome of [Petitioner's] trial. Accordingly, even if we assume that trial counsel erred in failing to object to the photograph's admission, [Petitioner] could not establish prejudice under *Strickland* given this Court's ruling on [Petitioner's] direct appeal.

*Allen*, 2011 WL 2463064, at *2.

An attorney's failure to raise a meritless argument does not amount to ineffective assistance. *See Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998). On direct appeal, the Delaware Supreme Court concluded that the trial court's admission of the photograph that was used during the out-of-court identification did not prejudice Petitioner's substantial rights and did not amount to plain error. *See Allen*, 2009 WL 1658182, at *3. Given this holding, Petitioner

cannot demonstrate a reasonable probability that the outcome of his trial would have been different but for counsel's failure to file motions intended to prevent the admission that same identification evidence. As such, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* in holding that counsel did not provide ineffective assistance by failing to file a motion to suppress the photograph or by failing to file a pre-trial discovery motion to review the photograph. Accordingly, the Court will deny Claim Three for failing to satisfy § 2254(d).

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED**. An appropriate Order will be entered.

13